UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHRISTOPHER MARTIN RIDGEWAY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7651** |
| **STRYKER CORPORATION AND HOWMEDICA OSTEONICS CORPORATION** | **SECTION: "B"(4)** |

## OPINION

Before the Court are appellant Christopher Martin Ridgeway's notice of appeal (Rec. Doc. 1), appellees Stryker Corporation and Howmedica Ostenics Corp.'s response (Rec. Doc. 14), and appellant's reply (Rec. Doc. 15). For reasons's assigned below,

**IT IS ORDERED** that the opinion of the Bankruptcy Court is **AFFIRMED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Appellees are in the business of developing, manufacturing, and selling medical technology. *See* Rec. Doc. 14 at 2. Between October 2001 and September 2013, appellant worked for appellees as a sales representative and district sales manager. *Id*.

On September 30, 2013, appellees sued appellant in the Western District of Michigan for breach of fiduciary duty, breach of contract that included a non-competition agreement, and

misappropriating trade secrets. *See* Rec. Doc. 1-2 at 3. Appellees alleged appellant was in breach of an employee confidentiality and intellectual property agreement, two other unspecified contracts, and a non-compete agreement. *Id*. Appellees further alleged appellant willfully and maliciously misappropriated information compromising trade secrets under the Michigan Uniform Trade Secrets Act ("MUTSA").

Two months later, appellant and Stone Surgical LLC[1] ("Stone") sued appellees in the Eastern District of Louisiana. *Id.* Appellant and Stone alleged appellees interfered with appellant's distribution deals. *Id*. Appellant and Stone further alleged that the non-compete agreement attached to appellees amended complaint was fraudulent. *Id*. The two cases were then consolidated for trial in the Western District of Michigan. *Id.*[2]

During pre-trial, appellant was sanctioned twice for discovery violations. *Id*. First, in April 2015, appellant was sanctioned for failing to properly respond to discovery requests. *Id*. Then, on February 2, 2016, appellant was sanctioned again pursuant to appellees' filing a rule to show cause. *Id.* Pursuant to the rule to show cause, a forensic review of appellant's electronic devices and e-mail accounts revealed over 188,000 missing documents. *Id*. at 3-4. In response, the court ordered

---

[1] Stone Surgical LLC is wholly owned by appellant.
[2] The record does not indicate reasoning as to why the two cases were consolidated.

appellant to pay the reasonable expenses associated with the rule to show cause.³ *Id.* The court further restricted appellant's response to appellees' fee petition to challenging the reasonableness of the specific fees and costs sought. *Id.*

Between February 16, 2016 and February 29 2016, the Western District of Michigan conducted a jury trial. *See* Rec. Doc. 14 at 8. On February 29, 2016, a jury found that appellant willfully and wantonly breach his fiduciary duty to appellees; was liable for breach of contract and for breaching his non-compete agreement; and willfully and maliciously misappropriated trade secrets in violation of MUTSA. *Id*. The jury also tendered a verdict against appellant and Stone on all their claims and counterclaims, including the contentions about a non-compete agreement. *Id.*

On March 9, 2016, the court rendered judgment against appellant for $745,195 and dismissed appellant and Stone's claims. *See* Rec. Doc. 1-2 at 4. Both appellant and Stone unsuccessfully appealed the court's judgment. *Id.*

Following trial, on March 23, 2016, appellant filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana. *See* Rec. Doc. 14 at 9. The automatic stay imposed by the filing of the bankruptcy case prevented appellees from filing and pursuing a post-judgment

---

³ This included attorneys' fees, costs associated with the forensic examinations, and appellees' motion for sanctions.

motion for attorneys' fees. *Id.* at 9. On September 22, 2016, appellees sought relief from the automatic stay to liquidate its claims for attorneys' fees, costs, and interest. *Id.* In response, appellant opposed relief. *Id.*

On November 29, 2016, the Bankruptcy Court denied the motion and opted to liquidate the claims itself. *See* Rec. Doc. 1-2 at 6. To begin the process, the court directed appellant to object to appellees' proofs of claim by December 9, 2016. *Id.* In objecting, appellant took a broad brush approach and explicitly claimed the right to supplement his objection. *Id.* On December 9, 2016, appellees filed its response to the objection. *See* Rec. Doc. 14 at 12.

Subsequently, the case was assigned to the United States Bankruptcy Court for the Eastern District of Louisiana. *Id.* at 6. During an April 7, 2017, telephone status conference, appellant was denied an oral motion to file an entirely new objection to appellees' proof of claim. *Id.* Instead, the Bankruptcy Court ordered appellant to supplement his objection no later than May 15, 2017. *Id.* On May 15, 2017, appellant timely filed his supplemental objections. *Id* at 7. However, in violation of the order, appellant failed to identify entries he objected to under the common core theory. *Id.* The supplement also included entirely new objections not raised in appellant's initial objections. *Id.* In response, appellees filed a response to appellant's supplement

and a motion to strike the supplemental objection for failure to comply. *Id.* On July 5, 2017, the Bankruptcy Court granted appellees' motion to strike in part. *Id.* Specifically, the Bankruptcy Court stuck appellant's objections under the common core doctrine except to the extent they were specifically identified. *Id.*

On August 14, 2017, appellant filed a motion to reconsider and a notice of appeal. *Id.* On September 8, 2017, the Bankruptcy Court denied the motion to reconsider. *See* Rec. Doc. 14 at 16. On November 20, 2017, the Bankruptcy Court denied the notice of appeal. *Id.* at 14. After the Bankruptcy Court denied appellant's motions, appellant filed a second notice of appeal. *See* Rec. Doc. 1-2 at 8. The second notice of appeal was denied and deemed interlocutory. *Id.*

On May 18, 2016, appellant successfully sought relief from the automatic stay to pursue his appeal of the Western District of Michigan's judgment. *See* Rec. Doc. 14 at 16. Thereafter, appellant filed a notice of appeal of the judgment with the Sixth Circuit. *Id.* at 17. On May 24, 2017, the Sixth Circuit affirmed the judgment. *Id.* On July 12, 2017, the Sixth Circuit denied appellant and Stone's request for rehearing *en banc*. *See id.* On October 17, 2017, appellant and Stone filed a petition for writ of certiorari. *Id.* On October 17, 2017, the United State Supreme Court denied certiorari. *Id.*

On September 1, 2017, the Bankruptcy Court conducted an evidentiary hearing. *Id*. at 18. During the evidentiary hearing, both parties introduced volumes of evidence and extensive testimony. *See* Rec. Doc. 1-2 at 8. On July 27, 2018, the Bankruptcy Court entered a memorandum opinion and order allowing appellees to recover a single, nonpriority, prepetition unsecured claim of $3,027,650.05. *See* Rec. Doc. 14 at 23.

In the present appeal, appellant challenges the award of $1,920,693.14 for attorneys' fees under MUTSA and the common core doctrine. *See generally* Rec. Doc. 1.

**PARTIES' CONTENTIONS**

Appellant argues that (1) the common core theory of recovery does not allow appellees to bootstrap a fee claim; (2) appellees should not be entitled to attorneys' fees under MUTSA as a matter of law; and (3) the Bankruptcy Court's decision disregards both the disproportionality between the jury's MUTSA verdict and the fee award and appellees' own role in multiplying the underlying litigation. *See id.* at 14-17.

Appellees argues that the Bankruptcy Court (1) correctly applied the common core doctrine in its reasonableness analysis for attorneys' fees under MUTSA; (2) properly awarded attorneys' fees under MUTSA; and (3) did not abuse its discretion in determining that an award of $1,920,693.14 for attorneys' fees under MUTSA was reasonable based on the common core of facts. *See*

6

Rec. Doc. 14 at 24-29. Appellees also argue that the Bankruptcy Court properly entered the supplemental objection order and strike order. *Id*.

**STANDARD OF REVIEW**

The appropriate level of judicial scrutiny of bankruptcy appeals is *de novo* review of questions of law and a clearly erroneous standard for questions of fact. *See In re Gamble*, 143, F.3d 223, 225 (5th Cir. 1998); *see also Jones v. Wells Fargo Home Mortgages, Inc.*, 489 B.R. 645, 650-51 (E.D. La. 2014). Factual conclusions based on misapplied or erroneous legal standards are also subject to *de novo* review. *See In re T-H New Orleans Ltd. P'ship*, 188 B.R. 799, 802 (E.D. La. 1995). Matters under a bankruptcy court's discretion, such as the awarding of attorneys' fees, are only reversible if there is an abuse of discretion. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Equal Employment Opportunity Comm'n v. Dolgencorp, LLC, 899 F.3d 428, 436* (6th Cir. 2018). A district court abuses its discretion if its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).

**LAW AND ANALYSIS**

   **A. GENERAL PRINCIPALS**

Under the American rule, attorneys' fees generally are not recoverable from a losing party. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). However, a prevailing party may collect attorneys' fees on both successful and unsuccessful claims if those claims involved a common core of facts or are based on related theories. *See Hensley*, 461 U.S. at 435.

Although the common core doctrine is rooted in the civil rights context, it has been applied to a variety of claims outside of the context. *See*, *e.g.*, *Trustees of the Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.*, No. 11-CV-14656, 2018 WL 3524692 (E.D. Mich. July 23, 2018)(applying common core to ERISA); *Dice Corp. v. Bold Techs. Ltd.*, No. 11-CV-13578, 2014 WL 2763618, at *3 (E.D. Mich. June 18, 2014)(applying common core to MUTSA and copyright claims); *Degussa Admixtures, Inc. v. Burnett*, No. 1:05-CV-705, 2007 U.S. Dist. LEXIS 23091, at *5-7 (W.D. Mich. Apr. 4, 2007)(awarding attorneys' fees under MUTSA and fees spent on claims related to breach of contract and interference with contract and business relationships).

Special damages are defined as damages that are not the ordinary result of the conduct alleged. *See Meyers v. Moody,* 693 F.2d 1196, 1212 (5th Cir. 1982)(defining special damages as "outlays attributable to the defendant's wrongful conduct."). Special damages must be specifically plead. *See* FED. R. CIV. P. 9(g). However, in contrast to special damages, the common core

doctrine was first promulgated in an attempt to determine reasonable fees via a post-judgment motion. *See Hensley*, 461 U.S. at 433 n.7.

MUTSA allows awards for attorneys' fees under a discretionary basis upon a finding of willful and malicious appropriation. *See* MICH. COMP. LAWS SERV. § 445.1905. In a diversity action, courts must apply state substantive law and federal procedural law in determining an award of attorneys' fees. *See Hunt v. Hadden*, 127 F. Supp. 3d 780, 787 (E.D. Mich. 2015). Attorneys' fees must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. *See* FED. R. CIV. P. 54(d). Typically, attorneys' fees are collateral to the merits and awarded after judgment by a Rule 54(d)(2) motion. *See* FED. R. CIV. P. 54(d)(2)(B)(providing that collateral claims for attorneys' fees are recoverable by motion after the entry of judgment); MICH. COURT RULE 7.202 (6)(a)(iv); *see also Dryvit Sys., Inc. v. Great Lakes Exteriors, Inc.*, 96 Fed.Appx. 310, 311 (6th Cir. 2004). Unless modified by statute or court order, a Rule 54(d)(2) motion must be filed fourteen days after entry of judgment. *See* FED. R. CIV. P. 54(d)(2)(B).

The United States Supreme Court has held that courts have the inherent power to assess attorneys' fees as a sanction for conduct which abuses the judicial process. *See Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45 (1991). Courts also have the authority to award

attorneys' fees where a party has acted in bad faith or for oppressive reasons. *See BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010). Attorneys' fees and costs are matters traditionally reserved for the court. *See Hunt*, 127 F. Supp. 3d at 787. Simply because an attorneys' fees award is discretionary does not automatically mean that the discretion belongs to a jury. *See id*. The primary exception involves disputes in which attorneys' fees are authorized by contract. *See Dryvit*, 96 Fed.Appx. at 311("[I]n Michigan, attorneys' fees awarded by a 'prevailing party' contract clause are considered damages, not costs, and therefore are not collateral to the merits.")(citations omitted).

The lodestar method of calculating attorneys' fees awards is presumptively reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 599 U.S. 542, 546 (2010)("[t]he lodestar method . . . cabins the discretion of trial judges, permits meaningful judicial review and produces reasonably predictable results."). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *See Webb v. Dyer County Bd. Of Educ.*, 471 U.S. 234, 242 (1985). When the documentation of hours is inadequate, a district court may reduce the award accordingly. *See Hensley*, 461 U.S. at 433.

**B. THE COMMON CORE DOCTRINE**

The Bankruptcy Court correctly applied the common core doctrine. Although, special damages must be plead pursuant to Rule 9(g), the common core doctrine is not a form of special damages. The common core doctrine is merely a mechanism in which attorneys' fees may be rewarded.

Appellant's case law suggesting that the common core doctrine must be plead pre-judgment involves a party's attempt to assert a new claim, is outdated, or fails to comply with both Rule 9(g) and Rule 54(d)(2). *See generally* Rec. Doc. 11 at 21-26; Rec. Doc. 15 at 5-8. Appellant's reliance on *Southern Constructors Group v. Dynalectric Co.*, 2 F.3d 606, 609-11 (5th Cir. 1993) is unpersuasive. *Southern* dealt with a losing party's attempt to raise new quasi-contract claims that were not raised during relevant proceedings. *See Southern*, 2 F.3d at 608-09. Here, appellees were not attempting to raise new issues on appeal. Rather, appellees sought attorneys' fees via a post-judgment motion. *See generally* Rec. Doc. 14.

Appellant's reliance on *In re Am. Cas. Co.*, 851 F.2d 794, 802 (6th Cir. 1998) is unconvincing. Rule 54 was specifically amended and took effect December 1, 1993, with the purpose of "harmonizing and clarifying" the procedural requirements for attorneys' fees requests. *See* Fed. R. Civ. P. 54 advisory committee's notes (subdivision (d)); *see also* 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2679 (Supp. 1996). Thus,

even if the Bankruptcy Court's granting of attorneys' fees under the common core doctrine were construed as special damages, appellees' post-motion judgment was timely. *See* Rec. Doc. 1-2 at 5. The filing of the bankruptcy case stayed the time period for filing a request under Rule 54. *See* 11. U.S.C.A. § 108(West). Further, the cases use of Rule 9(g) dealt with the award of attorneys' fees as special damages pursuant to a contractual claim. *See In re Am. Cas. Co.*, 851 F.2d at 799-802. To analogize the common core doctrine to a contractual claim is misplaced.

Further, appellant's reliance on *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996) is disturbingly incomplete. In *United Indus*, the court stated Rule 54(d)(2) was amended to deal with this exact issue. *See United Indus*, 91 F.3d at 765-66. The court explicitly stated "Rule 54(d)(2)(A) requires that claims for attorneys' fees must be made by separate motion to the district court [] [u]nless modified by statute or court order." *Id*. However, unlike in this case, the party seeking attorneys' fees failed to comply with both Rule 9 and Rule 54. *See id*.("[I]t is undisputed that United did not specifically plead attorneys' fees under Rule 9(g) . . . . Moreover . . . United failed to comply with [Rule 54(d)(2].") . Here, this is clearly not the case. Appellees specifically plead attorneys' fees and timely filed their motion in compliance with Rule 54. *See* Rec. Doc. 14 at 9.

Appellant's argument that the courts that have applied the common core doctrine outside civil rights context "did not analyze all of the facts and law before them" is meritless. *See* Rec. Doc. 11 at 34. It is clear that the common core doctrine has explicitly been applied to a variety of cases outside of the civil rights context and appellant's conclusory statements are not supported by any legal arguments. In fact, nothing in *Hensley* explicitly states that the common core doctrine is strictly confined to the rights conferred by the statutes enumerated in 42 U.S.C. § 1988. *See generally Hensley*, 461 U.S. 424. The Court finds that the application of the common core doctrine outside of the civil rights context is not an unreasonable application.

Appellant's argument that the unpublished decisions applying the common core doctrine outside the civil rights contexts are non-binding is misleading. *See* Rec. Doc. 15 at 17. Non-binding authority is nevertheless persuasive. *See U.S. v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009)(noting although unpublished decisions do not have precedential authority, they may be considered for their persuasive value); *Smith v. Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009)(noting that a court may consider whether the application of persuasive authority would lead to an absurd or inequitable result). Appellant fails to cite to one authority that demonstrates why the Court may not, or should not, consult the

non-binding common core decisions relied on by the Bankruptcy Court and appellees.

Appellant's argument that the Bankruptcy Court failed to follow controlling Fifth Circuit precedent is meritless. *See* Rec. Doc. 11 at 35-43; *see also* Rec. Doc. 15 at 5-12. Regardless of whether appellant's common core objections were sustained, appellees have shown that the Sixth Circuit and other courts have applied the doctrine outside of civil rights context. *See* Rec. Doc. 1-2 at 30-33. The Bankruptcy Court's memorandum even analyzed appellant's contention had it been sustained. *Id*.("[n]othing suggests that the Michigan trial court would not, consistent with Sixth Circuit law and precedent in the trial court's district, have held that the common core doctrine supports Stryker's recovery of [] reasonable attorne[ys'] fee[s]"). The Court agrees with the Bankruptcy Court's analysis and use of the common core doctrine.

### C. MUTSA

Appellant's argument that appellees never presented its attorneys' fees claim to the jury is nothing more than an attempt to parse statutory language. *See* Rec. Doc. 11 at 44-51. Statutory language is read according to its ordinary and generally accepted language. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019)(citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011)). Here, MUTSA controls the award of attorneys' fees in this action. MUTSA allows a court

discretion to award attorneys' fees upon a finding of willful and malicious misappropriation. *See* MUTSA § 445.1905, *supra.* The term court is synonymous with "[t]he judge or judges who sit on a tribunal." *See* COURT, BLACK'S LAW DICTIONARY (11th ed. 2019). Nothing in MUTSA's statutory language suggests that the term court was legislatively intended to mean a jury in opposition of the words ordinary meaning. Where a court's examination of the ordinary meaning and structure of a statute yields a clear answer, judges must stop. *See Hughes Aircraft Co.*, *v. Jacobson*, 525 U.S. 432, 438 (1999). Accordingly, Appellant's argument fails.

Appellant's reliance on contractual cases such as *Dryvit Systems* have no application here. *See* Rec. Doc. 11 at 45-47. Statutory prevailing party claims for attorneys' fees via post-judgment motions is common practice in both federal and Michigan state courts. *See e.g.*, *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 280 n.2 (5th Cir. 1991)(noting that recent Supreme Court precedence suggests that in federal courts, attorneys' fees authorized by statute are properly awarded by the court as a post-judgment collateral matter); *see also Hunt*, 127 F. Supp. 3d 780 (E.D. Mich. 2015)(awarding post-judgment motion for attorneys' fees under Michigan conversion statute); *In re Jonatzke*, 478 B.R. 846 (Bankr. E.D. Mich. 2002)(awarding post-judgment motion for attorneys' fees under MUTSA). In contrast, contractual cases such

15

as *Dryvit* deal with prevailing party clauses for attorneys' fees, not statutory awards. *See e.g.*, *Dryvit*, 96 Fed. App'x at 310.

In fact, in *Jonatzke*, the court, not a jury, awarded attorneys' fees despite the creditor's failure to specifically distinguish where the attorneys' fees arose, citing only to MUTSA. *See In re Jonatzke*, *478* B.R. at 870-75. The debtor, like appellant here, was sanctioned twice for discovery violations. *See id*. at 851-53. The court reasoned "[g]iven the egregiousness of the Debtor's behavior . . . it is inconceivable to this Court that the Wayne County Circuit Court would have declined to exercise its discretion under [MUTSA]." *See id*. at 870. Despite appellant's conclusory statements that the *Jontazke* holding was improper, appellant fails to prove otherwise with any legal argument. *See* Rec. Doc. 11 at 47-48; *see also* Rec. Doc. 15 at 24. The fact that a debtor is sanctioned for misconduct and additionally sanctioned for the costs associated with the underlying misconduct does not mean a debtor has been sanctioned twice.

Appellant's argument that appellees' claims for attorneys' fees under MUTSA is limited to MUTSA time entries also is misplaced. *See* Rec. Doc. 11 at 48-51. Although a party seeking attorneys' fees bears the burden of documenting entitlement, appellee's billings provided the Bankruptcy Court with enough information to thoroughly analyze its MUTSA and common core claims. *See* Rec. Doc. 1-2 at 18-45. The record indicates the Bankruptcy

Court meticulously awarded, adjusted, and reduced appellee's attorneys' fees award. *See id*. Having reviewed the record, the Court finds that the Bankruptcy Court did not err in awarding or applying appellees' attorneys' fees under their MUTSA claim.

**D. ATTORNEYS' FEES AWARD**

Appellant appears to incorrectly suggests proportionality between damage awards and attorneys' fees awards is necessary. *See* Rec. Doc. 11 at 51-54. Although proportionality is an appropriate consideration in the typical case, it is not dispositive. *See Combs v. City of Huntington*, 829 F.3d 388, 396 (5th Cir. 2016); *see also Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991). Regardless of any timeliness arguments, the Supreme Court has expressly held the lodestar method of calculating attorneys' fees awards is presumptively reasonable. *See Perdue*, *supra* at 546. As stated above, the record indicates the Bankruptcy Court methodically analyzed the appropriate law and facts in awarding appellees' attorneys' fees. *See generally* Rec. Doc. 1-2. Because our cases reject a *per se* proportionality requirement, the Court finds the Bankruptcy Court did not base its holding on an erroneous assessment of the law or evidence.

Appellant's claims that the Bankruptcy Court failed to consider appellees' role in multiplying litigations by attaching an allegedly forged non-compete agreement is unconvincing. *See* Rec. Doc. 11 at 53-54. This argument has already been considered

and rejected by the Western District of Michigan. *See* Rec. Doc. 11 at 54. Deference is given to the original fact finder because of that court's superior position to make determinations of creditability. *See* FED. R. BANKR. P. 8013; *see also Anderson v. City of Bessemer*, 470 U.S. 564 (1985). Because appellant has not set forth any additional facts to support the contention, the Court holds that the claim is unsubstantiated and gives deference to the Western District of Michigan's findings.

Accordingly, the judgment of the Bankruptcy Court is **AFFIRMED**.

New Orleans, Louisiana this 28th day of August, 2019

_____
SENIOR UNITED STATES DISTRICT JUDGE